# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MICHAEL A GALLUZZO,

        Petitioner,     :     Case No. 3:19-cv-171

  - vs -                               District Judge Walter H. Rice
                                          Magistrate Judge Michael R. Merz

SCOTT SPRINGHETTI,
  Director, Tri-County Regional Jail,

                                          :
        Respondent.

## ORDER AND SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Michael A Galluzzo, is before the Court on Petitioner's Objections (ECF No. 37) to the Magistrate Judge's Report and Recommendations recommending dismissal of the Petition (the "Report," ECF No. 36). Having found the Objections untimely, the Magistrate Judge struck them (the "Striking Order," ECF No. 38). Petitioner has objected to the Striking Order (ECF No. 39). District Judge Rice has recommitted the case to the Magistrate Judge under Fed.R.Civ.P. 72(b)(3) for reconsideration in light of both sets of Objections (ECF No. 40). Respondent has filed a Reply to Petitioner's Objections to the Report (ECF No. 41).

**The Striking Order**

The Report was filed on September 1, 2020, and sent to Petitioner by regular mail the same day by the Clerk (See docket entry for ECF No. 36). The last page of the Report notified Petitioner that any objections had to be filed within seventeen days. *Id.* at PageID 307-08. This period consisted of the fourteen days provided in the text of Fed.R.Civ.P. 72(b) plus the three days added by Fed.R.Civ.P. 6 because the Report was being served on Petitioner by mail.

Petitioner's Objections were not filed until September 23, 2020, five days after the deadline. Noting these facts, the Magistrate Judge entered the Striking Order (ECF No. 39).

Petitioner objects that he mailed his Objections on September 15, 2020 (ECF No. 39) and asserts that this should have been adequate time for the Postal Service to deliver the Objections from St. Paris, Ohio, to Dayton, Ohio, by September 18. The Magistrate Judge agrees with Petitioner that his expectation of timely delivery was not unreasonable. Accordingly, the Striking Order is VACATED and Petitioner's Objections to the Report will be considered on the merits.

**Merits Objections**

Petitioner's first claim is that the court that tried, convicted, and sentenced him did not have jurisdiction to do so. (Memorandum in Support of Petition, ECF No. 32, PageID 269). The Report remarked that federal courts have long-standing authority to grant relief from convictions entered by courts without jurisdiction (Report, ECF No. 36, PageID 301-02). It noted that Petitioner had raised his lack of jurisdiction claim on appeal to the Ohio Second District Court of Appeals which had decided the claim against him. *Id.* at PageID 301, 303, citing *Village of St. Paris v. Galluzzo*, 2020-Ohio-308, ¶ 13 (Ohio App. 2nd Dist. Jan 31, 2020). Under 28 U.S.C. § 2254(d)(1), when a state court decides a

federal constitutional claim on the merits, a federal habeas court must defer to that decision unless it is contrary to or an objectively unreasonable application of Supreme Court precedent. Because the Champaign County Municipal Court has territorial jurisdiction over offenses alleged to have been committed in the Village of St. Paris and Petitioner had been brought before that court by arrest, the Report concluded the Second District was correct and Petitioner's jurisdictional challenge should be dismissed (Report, ECF No. 36, PageID 303).

Petitioner objects "The first issue to be addressed in the instant matter is whether the municipal court had proper jurisdiction to bring charges against the 'real man', not the Ens Ligis [sic] corporate entity. . ." (Objections, ECF No. 37, PageID 310). Despite fifty years at the Bar as of next month, the Magistrate Judge has no idea what Petitioner is talking about. Black's Law Dictionary defines "*ens legis*" as "A creature of the law; an artificial being as opposed to a natural person. The term describes a corporation, which derives its existence entirely from the law." (7th ed. at 552). In this case it was Michael Galluzzo, the natural person, not created by statute, the "real man" if you will, who was arrested, prosecuted, tried, convicted, and imprisoned. If there exists some entity created solely by law and named "Michael Galluzzo," that entity was not prosecuted in this case and, by the way, would have no standing to seek habeas corpus relief which is only available to natural persons.

Petitioner next objects that he challenged jurisdiction at the outset of the case against him and this challenge required the prosecutor and the municipal court to establish jurisdiction on the record before proceeding, which he asserts they did not do (Objections, ECF No. 37, PageID 310). The Report rejected this claim, concluding that while a court must have jurisdiction, there is no Supreme Court authority requiring that that jurisdiction be established of record before a state court can proceed. (Report, ECF No. 36,PageID 303-04.)

Petitioner objects by citing case law from the United States Supreme Court about the jurisdiction of **federal**, not **state** courts. For example, he relies on *McNutt v. General Motors*

*Acceptance Corp.*, 298 U.S. 178, 182-83 (1935), where the Supreme Court held the burden of proof of federal court jurisdiction is on the party asserting jurisdiction if it is challenged.  When the question is the subject matter jurisdiction of the federal courts, the Supreme Court has repeatedly held that an objection to subject matter jurisdiction is not and cannot be waived, to the point of raising it *sua sponte* on appeal.  *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152 (1908).  But the Supreme Court has never held that a conviction in a state court that actually had jurisdiction is unconstitutional if the court or prosecutor did not prove the jurisdiction on the record before proceeding.  To put it another way, there is no constitutional right to insist that a state court establish its jurisdiction by journal entry before proceeding.  Petitioner is correct that he can raise lack of jurisdiction of the state court in this habeas case and he would be entitled to habeas relief if he showed lack of jurisdiction.  But lack of proof of jurisdiction on the record before trial does not equate to lack of jurisdiction.  Petitioner has not shown that the Second District's decision that the Champaign County Municipal Court had jurisdiction is contrary to or an objectively unreasonable application of Supreme Court precedent.

Petitioner next argues he was prosecuted under a form of the St. Paris Ordinance in question which had not been passed by the St. Paris Village Council (ECF No. 32, PageID 271).  The Report noted that this claim had been rejected by the Second District Court of Appeals because Galluzzo has not presented it with a complete transcript of the trial court proceedings (ECF No. 36, PageID 304, citing *Galluzzo*, 2020-Ohio-308, ¶ 12.)  The Report concluded that this was an adequate and independent state court procedural decision and thus Petitioner had procedurally defaulted on the claim.  *Id.* at PageID 304-05.  Galluzzo objects that he tried to have evidence of this discrepancy admitted, but the trial judge refused to admit it, which he claims is "sedition to the Constitution and possible near treason."  (Objections, ECF No. 37, PageID 312-13).  But he offers no proof that the Second District was in error in finding he had not properly presented this claim to them.  His attempt

to add the supposedly correct Ordinance to the record now by attaching it to his Memorandum in Support (ECF No. 32) does not cure or excuse the procedural default of this claim. This Court is limited to reviewing the evidence that was before the state courts. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

Petitioner next claims he was not provided with full discovery of the state's case prior to trial (ECF No. 32, PageID 272). The Report rejected this claim on the grounds that there is no constitutional right to pre-trial discovery of the prosecution's case (ECF No. 36, PageID 305). After several pages of quoted case law discussing *Brady v. Maryland*, 373 U.S. 83 (1963), Petitioner argues

> If no discovery is provided, the defending party has no opportunity to determine if the evidence is exculpatory.
>
> Where the Petitioner was surprised at trial with the officer's body cam video and other evidence, the Petitioner moved to suppress the video and other evidence but was overruled by the court, a further violation of due process.

(Objections, ECF No. 37, PageID 319). The fact that Petitioner thinks he had a due process right to discovery simply does not establish that failure to provide it violated clearly established Supreme Court precedent. The evidence Galluzzo complains of not receiving was evidently inculpatory, and *Brady* applies only to exculpatory evidence.

At the heart of Petitioner's case lies his apparent claim that he had a constitutional right to travel in the manner in which he was traveling when arrested. The Report quoted the gravamen of this claim:

> Petitioner posed no harm to any individual or damage to any property while the "alleged" defendant was exercising his Constitutional liberty to travel in a safe and prudent manner as an American National, there was no imminent danger to the public or probable cause to initiate the stop. No "Law" had been violated by the Petitioner.

(ECF No. 32, PageID 269). The Report analyzed this claim as follows:

5

> All three charges on which Petitioner was found guilty involve the laws of the State of Ohio which regulate the operation of motor vehicles and require that such operators be properly licensed. Galluzzo apparently claims that the State of Ohio lacks constitutional authority to insist on proper licensing of drivers.

(ECF No. 36, PageID 204.)  Galluzzo disputes this interpretation of his claim and asserts instead:

> Where the Petitioner is clearly acting in the Common Law as a "state national," not a "corporate person" under statutory admiralty/maritime law, the Prosecution failed to define which law form it was invoking and how it has jurisdiction over the "real man" absent a crime, i.e., breach of the common law. (See O.R.C. 2744.0l(D), Law ... When used in connection with the "common law," this definition does not apply.)
>
> While the corporate STATE OF OHIO may license and regulate commerce and other business activities, including requiring registration of commercial vehicles (motor vehicles) and licensing of "drivers/operators" for hire, it oversteps its authority in applying such restrictions on the natural person that diminishes ones [sic] constitutional liberties.

(Objections, ECF No. 36, PageID 313-14.)  The Objections then continue at some length to argue that "the state cannot diminish the inalienable rights of the people" (Objections, ECF No. 37, PageID 314-17.  Petitioner argues he is not guilty because "Galluzzo was NOT "driving a motor vehicle" in the lawful OR LEGAL sense. Galluzzo was NOT "engaged in commerce for hire" or receiving any type of remuneration for his activity, therefore only "traveling" as a private, peaceful individual."

The Constitution of the United States does not recognize the distinction Galluzzo draws.  The Supreme Court of the United States has never held that driving a motor vehicle for non-commercial purposes is an inalienable right[1].  Petitioner cites California cases which he says establish that driving of the sort he was doing is a constitutional right, but only

---

[1] Assuming the Supreme Court would use the Originalist theory of interpretation to analyze this question, it would never find such a right as there were no motor vehicles in 1789.

decisions of the United States Supreme Court count in habeas corpus.

Galluzzo claims in some sense to be "sovereign." In the Report the Magistrate Judge stated "The Court expressly refuses to recognize that Petitioner is "sovereign" in any sense that this Court can recognize." Petitioner objects "The Petitioner's claim of "sovereign" has never been challenged or rebutted by any entity and is based on the family incorporeal herediments dating back to the granting of sovereignty on the people of the colonies by the King of England." (ECF No. 37, PageID 320).

Galluzzo cites first *People v. Herkimer*, 4 Cowen 345 (Sup. Ct. of Judicature of New York, 1825). That was a case in assumpsit in which the Clerk of Court was seeking to recover for work performed for Herkimer. Assumpsit was a common law writ for recovery in cases which today we would say "sound in contract." The question was whether Herkimer's debt to the clerk was discharged under the state insolvency statute. The court held it would not read that statute to extend to debts owed to state entities because the people of the State of New York had succeeded to the prerogatives of the English Crown and the King would not have been held bound by the statute unless it expressly extended to him. Nothing in the case suggests that individual people in New York have become sovereign, but rather the People as a whole, organized as an American State.

Petitioner next cites the famous case of *Chisholm v. Georgia,* 2 U.S. 419 (1793). He quotes

> " .. . at the revolution the Sovereignty devolved on the people; and they are truly the sovereigns of the country, but they are sovereigns without subjects ...... and have none to govern but themselves; the citizens of America are equal as fellow citizens, and as joint tenants in the sovereignty."

The holding in the case was that one of the States of the United States could be sued in federal court by a citizen of another State. Although language about the people being sovereign is used,

7

the reference is to the people collectively as citizens of a State; *Chisholm* did not hold that individual natural persons are sovereign. *Chisholm* was very promptly overruled by adoption of the Eleventh Amendment.

Galluzzo quotes the following from *United States v. United Mine Workers,* 330 U.S. 258 (1947): "There is an old and well known rule that statutes which in general terms divest preexisting rights or privileges will not be applied to the sovereign without express words to that effect." Indeed there is such an old and well-known rule – *Herkimer, supra*, relied on Sir Edward Coke, Lord Chief Justice in the seventeenth century, as its source. But the sovereign referred to in *United Mine Workers* is the United States of America, not any individual person.

Finally, *Yick Wo v. Hopkins,* 118 U.S. 356 (1886), Petitioner's last source, is an early application of the Equal Protection Clause to protect Chinese laundries from racial discrimination in building codes. It also says nothing about recognizing individual persons as sovereign. Petitioner argues at one point that he has committed no common law crime. True enough, because Ohio has no common law crimes. *Mitchell v. State*, 42 Ohio St. 383 (1884), *citing Key v. Vattier*, 1 Ohio 132, 144 (1823); *Winn v. State,* 10 Ohio 345 (1841); *Vanvalkenburgh v. State*, 11 Ohio 404 (1842); *Allen v. State,* 10 Ohio St. 287, 301(1859); *Smith v. State*, 12 Ohio St. 466, 469 (1861); *Knapp v. Thomas*, 39 Ohio St. 377, 385 (1883).

**Conclusion**

Having reconsidered the case in light of Petitioner's Objections, the Magistrate Judge again respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a

8

certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 5, 2020.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.